No. 14,454.

STATE OF LOUISIANA VS. A. E. BATSON.

SYLLABUS.

| 108 | 479 |
| e120 | 464 |

1. Though a criminal act may operate on more than one person, or thing, nevertheless, if it be but one act, consummated at one time, it may be charged as one offense, and an indictment, charging, in one count, the murder of six persons, is not bad, for duplicity, unless it appears, upon its face, that the deaths resulted from two or more distinct acts. But, if, upon the trial, it is shown that all the deaths did not result from the same act, the accused may, then, compel the State to elect upon which charge it will proceed.

2. Under the statute of 1898 (No. 135), a venire is not to be quashed merely for irregularities, or for non-compliance with the literal requirements of the law, in the matter of selecting and summoning the jurors, but only "where fraud has been practiced, or some great wrong committed, in the selection and summoning of the jury, that would work irreparable injury." Hence, the constructive injury resulting to the accused in a criminal prosecution from the facts, that the names on the slips placed in the general venire box are written by the clerk *and* the jury commissioners, instead of being written by the clerk, alone, and that the name of one juror is, by accident, duplicated, so that the whole number in the box falls one short of that contemplated by the statute, does not justify the quashing of the venire, in the absence of proof of fraud or actual injury.

3. The jury list and venire box are to be supplemented twice a year, or oftener, as the judge may require, so that the list shall contain 300 names of "competent, good and true" jurors; from which 20 are to be selected for the grand jury, leaving 280 to be put in the box. Save, however, upon the occasions when the box is thus supplemented, it is not required that it should contain 280 names; but it should, at all times, barring accidents and oversights, contain that number, *less* the number previously and legally drawn since it was last supplemented.

4. The ruling of the trial judge that a question asked a State witness, on cross-examination, was intended to impeach the testimony of a witness previously examined, and was inadmissible because no foundation for such impeachment had been laid, will not be disturbed upon the claim that such question was legitimate by way of cross-examination, when the testimony, given upon the examination in chief, is not brought up, and the question objected to has all·

the appearance of having been asked for the purpose attributed to it by the judge.

5. Where it appears that the accused, on trial for murder, had, after the murder had been committed, left certain movables, in the hands of a citizen, at the parish seat, and had then disappeared from the parish, and that, among the movables so left, some of which had belonged to the deceased, was a vest, supposed to be the property of the accused, in the pocket of which was a document purporting to have been written and signed by the accused, and indicating a purpose to take his own life, the vest and the document are properly admitted as relevant circumstantial evidence, without proof of the handwriting or signature of such document.

6. The rules of evidence to be applied in the prosecution, in this state, of crimes, offenses and misdemeanors, are those of the common law of England, save where it is otherwise provided by statute (R. S. 976). There has been no statutory modification of the common law rule, that, in prosecutions for murder, documents, otherwise irrelevant and which have not been admitted in evidence, are inadmissible when offered merely to prove handwriting by comparison. Articles 2245 C. C. and 325 C. P. establishing a different rule, are applicable only to civil proceedings.

A PPEAL from the fifteenth judicial district, parish of. Calcasieu— Miller, J.

Walter Guion, attorney general, and Joseph Moore, district attorney (A. R. Mitchell and Lewis Guion, of counsel), for plaintiff, appellee.

Paul A. Sompayrac and Winston Overton, for defendant, appellant.

The opinion of the court was delivered by

MONROE, J. The defendant, having been convicted of murder and sentenced to death, has appealed to this court, and presents his case by means of the following motions and bills of exception:

## I.

A motion to quash the indictment, for duplicity, in that it charges six offenses in one count.

The indictment charges that the defendant, "* * * did feloniously, maliciously, and of his malice aforethought, kill and murder L.

S. Earle, Mrs. L. S. Earle, Ward Earle, Fay Earle, John Earle, and Lemuel Earle * * *."

Our law does not require that the manner of the killing shall be set forth, but that "it shall be sufficient in every indictment for murder to charge that the defendant did, feloniously, willfully, and of his malice aforethought, kill and murder the deceased." (R. S. 1048.) The charge, as made, is, therefore, in strict accordance with the statute, and there is nothing upon its face to indicate that the persons named were not killed at the same instant and by the same act. It is true, in general, that a single count charging two or more substantive offenses is bad for duplicity, and that a substantive offense is one that is complete in itself and is not dependent upon another. And, from this, it is argued that the murder of one person being a substantive, or complete, offense, an indictment, charging, in one count, the murder of six persons, is, necessarily, bad. There are, however, but few rules which are without exceptions, inherent in, or predicated upon the same reasons or necessity, as, the rules themselves. Thus, charges of greater crimes include those that are less in degree. Every indictment for murder and every trial for murder includes a substantive charge of, and trial for, manslaughter, the reason for this being that, whereas the uniting in one charge, or count, of offenses differing in character and resulting from distinct acts, committed at different times, is calculated to confuse the issues and to embarrass both the prosecution and the defense, such consequences do not flow where the offenses charged result from the same act and merely differ in degree; but, on the contrary, in such cases, it is to the interest of the accused and of the orderly administration of justice that the legal consequences of the one act should be determined by one trial. Whilst, therefore, the view suggested by the learned and zealous counsel who, by appointment of the court, have defended the accused, is not without support, the weight of authority, and of reason, sustains the proposition that though a criminal act may operate upon more than one person, or thing, nevertheless, so long as it is one act, consummated at one time, it may be charged as one offense. Bishop New Cr. Pr., Sec. 437; Hughes Cr. Law & Pr., Sec. 2720; A. & E. Ency. of Law (2nd Ed.), Vol. 9, p. 641; Ency. Pl. & Pr., Vol. 10, p. 454; Gordon vs. State, 46 Ohio St. 626; People vs. Adams, 17 Wend. 475; Rucker vs. State, 7 Texas Appeal 549; Chiva-

State vs. Batson.

rio vs. State, 15 Texas Appeal —; Ben vs. State, 22 Ala. 9; Clem vs. State, 42 Ind. 420; State vs. Lena Wilkinson, 77 Miss. 705; Shin Forest vs. State, 13 Lea (Tenn.) 103; Hanson vs. State, 10 Lea (Tenn.) 390; Com. vs. McLaghlin, 12 Cush. 515; Rex vs. Benfield, 2 Burr 980; Com. vs. Griffin, 21 Pick. 523; Com. vs. Livermore, 4 Gray 18.

If, however, the testimony shows that the killing of two persons was not by one act, the defendant has the right to compel the State to elect upon which .charge it will proceed. Forest vs. State, 13 Lea (Tenn.) 104; Lang vs. State, 56 Ind. 102; Ency. Pl. & Pr., Vol. 10, p. 534. In the instant case it does not appear that the State was called on to make such an election, and as the motion which we are now considering was predicated upon the face of the indictment, is was properly overruled.

## II.

A motion to quash the venire on the grounds: "First, that the general venire box   *   *   *   did not contain the names of 300 competent, good and true men, as provided by law, at the time that the jurors were drawn. Second, that the said general venire box did not, at any time, contain the names of 300 competent, good and true men, whose names had been written on separate slips by the clerk of the court."

The following provisions of law applicable to the questions presented are to be found in Act No. 135 of 1898: Section 3 of that act provides, in substance, that the judge of the district court shall appoint five good citizens who are able to read and write the English language, and who, with the clerk of the court, or, in case of his disability, his deputy, shall constitute a jury commission, and that the commissioners shall be sworn faithfully to discharge their duties; and it contains other provisions which require no special notice at this time.

"Section 4.   *   *   *   That, within thirty days after their appointment, or sooner, if so ordered by the district judge, the members of the commission, or a majority of them, shall meet at the office of the clerk   *   *   *,   and, in the presence of two or more competent and disinterested witnesses, of lawful age, competent to read and write the English language, and residents of the parish, who shall be summoned by the clerk for that purpose, select, from the persons qualified under this act to serve as jurors   *   *   *,   the names of three hundred competent, good and true men, a list of whom shall be made out by the clerk,

under the supervision of the commission and said witnesses and said list shall be kept complete and supplemented from time to time as hereinafter enacted. Each of the names on said list shall be written by said clerk on a separate slip of paper with the number of the ward, or place of residence, of each person, and the slips of paper, or ballots, selected, except those containing the names of the persons chosen to serve as grand jurors, shall be placed in a box which shall be labelled 'General Venire Box.' Immediately after completing said general venire list, the commission shall select therefrom the names of twenty citizens, who shall be subject to duty as grand jurors * * *. The names of the persons so selected shall be written on slips of paper by the clerk in the presence of the commissioners, and they shall place the slips in an envelope, seal the same and endorse thereon the words: 'List of Grand Jurors.' Thereupon, the slips contained in the General Venire Box shall be well mixed, and one of the members of the jury commission, in the presence of the others and of the witnesses * * * shall draw therefrom, one at a time, the names of thirty persons to serve as petit jurors for the first week in the next ensuing session of court, and, if, in the judgment of the commission, a jury may be so required, or if the district judge should so direct, they shall draw, in the same manner, thirty additional names, for service as jurors during the second week of the session * * *."

It is further provided that the clerk shall keep a record of the drawings, with a list of the names, which, latter, is to be delivered to the sheriff and published, or posted; and that * * * whenever the judge shall deem proper * * * to direct the commission to draw additional jurors for service during any session of the court, or during a continuous session, no publication of the list shall be necessary," etc.

"Section 6. * * * That not less than twice in each year, or once in every six months, the jury commission shall meet at the clerk's office, and, after being furnished by the clerk with a list of grand jurors and those who have served as regular jurors since the previous drawing of the general venire, shall, in the presence of said witnesses, examine the original venire list and strike therefrom the names of those who have served, as well as the names of others on the list who are known to have died, removed from the parish, become exempt, or disqualified to serve as jurors, since their names were entered thereon; and the names of

those who have died, removed, become exempt, or disqualified shall also
be taken from the general venire box. The commission shall then supplement the original list and the ballots in the box with the names of
the same number of good and competent men from the qualified jurors
of the parish as have been taken from the box and erased from the list,
so as to keep the number of names in the general venire box and on the
jury list as the original standard of 300 contained therein. It shall be
the duty of the clerk of the district court, at each meeting of the commission, to make a *proces verbal* of its acts, in detail, and record the
same in a book to be provided for the purpose by the police jury, which
shall, at all times, be open for the inspection of the public. Said *proces
verbal* shall be signed by the clerk of court, the members of the commission present, and the witnesses."

"Section 10. * * * That in districts composed of more than one
parish, the jurors drawn for the first week of the session shall constitute the petit jury for that week and those drawn for the second shall
serve for the time they are drawn; provided, that, if the jury drawn
for any week of the session do not serve as jurors during that week,
they may be required to serve during a subsequent week of any session
of the court until a second venire shall have been drawn by the commission, unless sooner discharged by the district judge," etc.

"Section 11. * * * That, whenever the district judge thinks
proper, he shall require the jury commission to select additional jurors,
or talesmen, pursuant to the formalities prescribed in section 4 of this
act, except as to the publication of the list of jurors so drawn, which
shall not be necessary, * * * but nothing herein contained shall
be so construed as to limit the right of the judge, in criminal cases,
after the list of jurors or talesmen drawn by the commission is exhausted, after the trial commenced, to order the summoning of talesmen from among the bystanders, or persons in the proximity of the
courthouse, or from any portion of the parish, remote from the scene
of the crime, which the judge may designate."

"Section 15. * * * That it shall not be sufficient cause to challenge the general venire for any session of the court, or portion thereof, or, for any service, at any time, in any parish or district of the
State, or set aside the venire, because some of the jurors on the list are
not qualified to act, nor because of any other defect or irregularity in

the manner of selecting the jury as above provided, and to" (no) "such defect or irregularity in the selection thereof, or the summoning of the jury, shall be sufficient cause, if it do not appear that some fraud has been practiced or some great wrong committed, in the selection and summoning of the jury, that would work irreparable injury; *provided,* that it shall be good ground to challenge, for cause, any juror who is not qualified to act under the provisions of this act."

It appears from the evidence, taken on the hearing of the motion now under consideration, that the jury commissioners were appointed July 5th, 1900, and that they held a meeting on the 28th of the same month at which they selected three hundred jurors and caused a list to be made and the names, after selecting those required for the grand jury, to be written on separate slips and placed in the general venire box. It is objected on behalf of the defense that the selection thus made was not original, but that the commissioners merely supplemented a selection, which had been previously made, of jurors whose names were already in the box, so as to bring the number up to that required by the act of 1898. Assuming this to be true, though the evidence makes it probable, rather than certain, the objection is not well founded, there being neither allegation nor proof that the names in the box were not those of competent, good and true men, qualified under the act of 1898 to serve as jurors and the mere fact that their names were in the box not disqualifying them or affording any reason why they should not be selected.

Whether all of the names were, at that time, written on slips, *by the clerk,* or, whether some of them were written by that officer and some by the jury commissioners, is not altogether clear, but it is quite certain that, upon subsequent occasions, when the names were supplemented, the latter course was pursued; that is to say, some of the names were written on the slips by the clerk and some by the jury commissioners. The allegation, in the motion, "that the said general venire box did not, at any time, contain the names of three hundred competent, good and *true men, whose names had been written on separate slips by the clerk of the court,"* is, therefore, true, to the extent that the names had not been written by the clerk when the box was filled upon the occasion last preceding the trial, and it is probably true as made. The names were, however, written, either by the clerk or by the

jury commissioners, and the law-makers seem to have taken into ac-
count the possibility that the law might not at all times and in all
respects, be, literally, complied with, and to have provided that the ends
of justice should not thereby be defeated. Section 15 of the act of
1898, hereinbefore quoted, expressly denies to the accused the right to
set aside the venire for any defect or irregularity in the selection or
summoning of the jurymen, unless it (slightly paraphrasing the lan-
guage) "shall appear that some fraud has been practiced, or some great
wrong committed,  *   *   *   that would work irreparable injury." It
is evident from this that a mere constructive injury, having no other
basis than the implication resulting from the failure of the officers
designated to comply with the letter of the law, is insufficient to justify
the quashing of the venire, and that, in order to entitle the defendant
to a judgment on his motion, it would be necessary for him to show, not
only the non-compliance complained of, but, that some fraud had been
practiced or some great wrong committed that would (not *might*) work
him actual and irreparable injury. The defendant has alleged neither
fraud nor injury, of any kind, and, conceding that such an allegation
would be unnecessary if the facts which he has alleged and proved
could be said, of themselves, to constitute fraud, or to constitute injury
of the character mentioned, he has, nevertheless, failed to make out a
case within the meaning of the statute. It was, no doubt, the duty of
the clerk to have written, "under the supervision of the commissioners,"
the names upon the slips that were placed in the general venire box, and
it is to be regretted that he did not discharge that duty, and that the
commissioners did not confine themselves to supervising, instead of
assisting, him in so doing. But, the clerk and the commissioners are,
alike, sworn officers, and the fact that the latter participated in the work
in question, which it would have been their duty, in any event, to
supervise, did not, of itself, amount to fraud, or to a great wrong that
would work to the defendant any actual and irreparable injury. And
this is equally true of the complaint that, among the names contained
in the box, after it was last supplemented, that of Thomas Patrick was
duplicated. The clerk explains that this was an accident, resulting
from the fact that the name of Patrick, being already in the box, was
overlooked and was included in the supplemental list. It is the pur-
pose of the law that the list and the box shall be supplemented so that

the former shall contain the names of three hundred, and the latter the names of two hundred and eighty, competent jurors, at least twice a year, but it does not follow that the general venire is, under all circumstances, to be quashed, if the requirement in that respect is not, literally, complied with. Thus, by section 6 of the act of 1898, when the list and the box are supplemented, the commissioners are required to strike therefrom " the names of such as have so served, as well as the names of others * * * who are *known* to have died, removed from the parish, become exempt, or disqualified." But it could not reasonably be contended that the venire should be quashed because of the leaving on the list, or in the box, of the name of a juror whose death, removal, exemption, or disqualification was unknown to the commissioners. And yet, the situation would be precisely the same, as where, by accident, the name of a juror is duplicated; *i. e.,* there would be less than the contemplated number of names, of competent jurors, on the list and in the box. In neither case, however, would there be any actual injury to the litigant or party accused. In fact, no actual injury would be inflicted if, under the law, the jury commissioners, as well as the clerk, were required to write the names, and fewer names were required for the purposes of the general venire. It will be observed that, from the list of three hundred names, required to be prepared, there are, first, to be selected twenty names, for the purposes of a grand jury, and that the remaining two hundred and eighty names, written on slips, are to be placed in the box for the purposes of the general venire. And, from those names, the petit juries are to be drawn, until the box is supplemented, at the end of six months, or sooner, if so ordered by the court. According to the testimony, the list and the box were supplemented, in this instance, on December 31, 1901, and, thereafter, and prior to the drawing of the venire for the week during which the instant case was set for trial, there were selected and drawn, for grand, and petit, jury service, the names of 110 jurors, leaving 190 names in the box, when, by order of the court, two venires, of thirty jurors each, were drawn for service during the weeks beginning April 14th, and April 21st, respectively, the case against the defendant being then fixed for the week beginning April 14th. It, therefore, appears that the names had been supplemented up to the required number within six months preceding the drawing of the venire of which the defendant complains,

and, hence, although that venire was not drawn from a box containing 300, or 280, names, that he has no legal cause for complaint.

In the case of State vs. Love, 106 La. 658, to which we are referred, there was an allegation of legal fraud and great injury, and it was shown that the jury commissioners, in undertaking to supplement the general venire, added only eight names, when they should have added a much greater number. This was held to be so gross a disregard of the mandates of the law as to amount to an injury, with respect to which the accused was entitled to relief, but the ruling thus made cannot, reasonably, be applied to the facts here presented.

## III.

John W. Downs, a witness for the State, was asked, by counsel for defendant, on cross-examination, "Did Mr. Gauthier within the last ten days or two weeks, approach you and ask you what day Batson was here, and you told him February 14th, Mr. Gauthier then pulled out a memorandum book, on one page of which was April 14th, he then turned that page over and wrote down February 14th, and Gauthier then asked you if it was morning or evening?" To which the counsel for the State objected, for the reason that the question indicated that it was asked for the purpose of contradicting and impeaching the testimony of Gauthier, already given as a witness for the State, and no proper foundation had been laid. This objection was sustained, reserving to defendant the right to put Gauthier on the stand in order to lay a foundation. Counsel for defendant, then, asked: "Did he not do the same thing on Tuesday and Wednesday of this week?" to which the same objection was made, and sustained. Whereupon counsel for defendant took a bill of exceptions. It is contended that the questions were competent for the purposes of the cross-examination of the witness on the stand; but the testimony previously given by the witness has not been brought up, and, as the questions appear to have been intended for the purpose of impeachment, and the answers might well have had that effect, we are unable to say that the trial judge committed any error in excluding them.

## IV.

The State offered in evidence a document marked P 5, to which counsel for defendant objected, on the grounds: "1st.. That there was

no proof that it was written by defendant. 2nd. There is no positive evidence that he wrote it, or by comparison of handwriting," which objections were overruled by the court, "Because this purported to be written by the accused, and was found in the said vest pocket, in said buggy, left by accused at Down's stable, when he took flight from Lake Charles."

The document in question reads as follows:

"P. D. PLANTATION, WELSH, LA.

"Welsh, La. Dec, 1901

"To any one whom it may concern thereof. I, one Edwin Batson, hereby giving my signature to this date, give my whereabouts to the public or to any one who finds this slip of paper my name is as follows Albert Edwin Batson was born in Atchison Mo Apr 8 1881 my father and M John and J Batson lived in said places J my father lives in Nodoway Co Mo my mother being now Mrs Joe Bayne lives in Spickards Mercer Co Mo my sister Mrs. C. M. Vredenberg lives in Princeton Mercer Co. Mo my brother J. N. Batson I do not know where he is but he that finds this will do the dead a justice by sending my mother or my sister word of my death, and how it occurred. This is all I request of the dear friends. So a long and happy life I do wish to you all signed a rit x—2. .y. 1—fare well

"A. E. BATSON
"friend to all. Ha. Ha bye bye I'm gone."

The fact that this instrument, purporting to have been written by the accused, was found in the pocket of a vest shown to have been left by him upon the occasion of his flight from the parish seat of the parish where the murder had been committed was, of itself, a circumstance in the case which might well have been relevant, and which, together with the authorship of the writing, was properly submitted to the consideration of the jury. State vs. Bradley, 6th Ann. 554.

## V.

The State offered in evidence the signature of W. B. Earle on the document marked P 12, for the purpose of comparing the same with the document marked P 4, which offering was objected to as inadmissible and irrelevant. The objection was overruled on grounds thus stated

by the trial judge, to-wit: "because P 12 had the genuine signature of Ward Earle, one of the victims, and the State was endeavoring to show that the notice on the door of the house where dead bodies were found had not been written or signed by him. This notice, marked P 4, was to the effect: "Gone, will be back Sunday or Monday, Ward Earle," and P 1 was a piece of paper picked up in the house where the bodies were found, containing thereon, "I won't be back for—" and further down, "gond, will be back Monday or Tuesday," in the same hand-writing as notice 4, indicating that the writer had practiced before adopting form of notice."

And to the ruling so made counsel for defendant objected and ex-cepted. The document P 12 is a written contract between Ward Earle and a land company, which has no relevancy to the prosecution or the defense in this case, the sole purpose of the offer being to establish a comparison between the writing of the signature and that of the docu-ments P 1 and P 4, the latter of which the State was endeavoring to prove had been written by the accused, though purporting to have been written and signed by Ward Earle and posted on the door of the house where the bodies of the victims were found.

Section 976 of the Revised Statutes of this State provides that:

"All crimes, offenses and misdemeanors shall be taken, intended and construed according to, and in conformity to, the Common Law of England; and the forms of indictment (divested, however, of un-necessary prolixity), the method of the trial, the rules of evidence, and all other proceedings whatsoever, in the prosecution of crimes, offenses and misdemeanors, changing what ought to be changed, shall be ac-cording to the common law, unless otherwise provided."

This is merely a re-enactment of section 33 of the act of 1805; but, dealing with it as of the date of the adoption of the Revised Statutes, there has, since then, been no other provision made with respect to "the rules of evidence"—which are to be applied in the prosecution of the crime of murder, and it, therefore, follows that we have only to ascertain what the common law rule applicable to the question at issue is in order to determine whether that question has been correctly de-cided. The rule is thus stated in Doe vs. Suckermore, 5 Ad. & Ell. 703 (31 E. C. L. 40), in which the early English cases were exhaustively reviewed:

"A direct comparison of handwriting by a witness has been, with the exception of one or two supposed cases, uniformly rejected; and it is only in very recent times that a jury has been allowed to institute such a direct comparison, and even that has been confined to comparison between documents proved and given in evidence in a cause, being relevant to the issues raised in the record, and which, being before the jury, it is hardly possible to prevent a comparison being instituted." (Citing a number of cases.) "One authority to the contrary is to be found in Allesbrook vs. Roach, 1 Esp. 351. But this court recently, in the case of Doe vs. Newton, N. & P. 1, 5 Ad. & El. 514, 31 E. C. L. 382, has expressly determined that documents irrelevant to the issue on the record shall not be received in evidence at the trial in order to enable a jury to institute such comparison. Much less can it be permitted to introduce them in order to enable a witness to do so."

See also Am. & Eng. Enc. of Law, 2nd Ed., Vol. 15, p. 264, and notes. This doctrine has been distinctly affirmed by this court in the only case in which, so far as we are informed, the question has been presented, Mr. Justice Wyley, as the organ of the court, saying:

"It is true, American decisions are not uniform on the subject, but as the rule has been so clearly settled, and upon the highest authority, in England, we think it best to adhere to it. We are not aware that the question has heretofore been presented to this court for adjudication. The writing offered to the jury in this case, and received by the court for the purpose of instituting a comparison of handwriting only, was not admissible, and the defendant has been convicted upon illegal evidence." State vs. George Fritz, 23rd Ann. 57.

It may be remarked in this connection that the author of the article under the title, "Handwriting," in the Am. & Eng. Enc. of Law (2nd Ed., Vol. 15, pp. 270-271, and note), includes the State of Louisiana among States which have statutes authorizing the proof of handwriting by comparison, and he makes the comment that the case above cited was "apparently decided without reference to the statute." The statute law to which the learned author refers is, however, that contained in articles 2245 of the Civil Code and 325 of the Code of Practice, which relate to civil proceedings, whereas, by section 976 of the Revised Statutes, hereinbefore quoted, it is provided that "the method of trial, the rules of evidence, and all other proceedings whatsoever in

the prosecution of crimes shall be according to the common law, unless otherwise provided." And no other provisions concerning the prosecution of the crime of murder have been made.

There are other bills of exception in the record, as also a motion for new trial, but they present no points of merit which have not been considered. For the reasons assigned, it is ordered, adjudged and decreed that the verdict and sentence appealed from be set aside and annulled and that this case be remanded, to be proceeded with according to law.

Mr. Justice BREAUX dissents, handing down a separate opinion.