It is therefore ordered that the appeal be dismissed.

(45 South. 389.)

No. 16,842.

STATE v. MARIONNEAUX et al.

(Dec. 16, 1907.)

1. JURY — JURY COMMISSION — ORDER OF APPOINTMENT.

The following order is sufficient in terms to comply with the requirement that the judge appoint five citizens to constitute a jury commission for the parish, namely: "It is ordered that a jury commission is hereby ordered to be composed of the following citizens," etc.—naming five citizens.

2. SAME.

The statute (Acts 1898, p. 218, No. 135, § 3) provides: "The evidence of the appointment of said jury commissioners, shall be the written order of the district judge, which order shall be entered upon the minutes of the district court." This statute is complied with by an order given verbally in open court and entered on the minutes of the court. The order need be written by the judge only when in chambers. The manifest object is to provide for the order being entered on the minutes, and, for being so entered, it must be in writing when made in chambers, and need not be when made in open court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 31, Jury, § 268.]

3. COURTS—ORDERS OF COURT.

An order made in open court by a court of record and duly entered of record is in a sense a written order of the judge. It is then an order of the court as contradistinguished from an order of the judge. The court is an organism which, as it were, speaks by the mouth of the judge and writes with the hand of the clerk.

4. JURY—DRAWING VENIRE—EVIDENCE.

The proper evidence of the manner in which the venires have been drawn is the procès verbal of the drawing. In the absence of sworn allegations of fraud, the accused is not entitled to have the general venire box opened and the names therein counted for the purpose of ascertaining whether the recitals of the procès verbal of the drawing are true. Whether accused would have such right upon alleging fraud, quære?

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin Kendrick Schwing, Judge.

Gus Marionneaux and others were found guilty, one of murder, and the others of manslaughter, and appeal. Affirmed.

Moise Lionel Levy and John Howell Pugh, for appellants. Walter Guion, Atty. Gen., and Albin Provosty, Dist. Atty. (Lewis Guion, of counsel), for the State.

PROVOSTY, J. One of the defendants was found guilty of murder, and sentenced to be hanged, and the others of manslaughter and sentenced to imprisonment at hard labor, and all have appealed.

Defendant moved to quash the indictment on two grounds:

First. That the jury commission which drew the list of grand jurors from which the grand jury that found the indictment against them was impaneled had not, as required by law, been appointed by the judge.

Second. That the jury commissioners selected the list of grand jurors from the general venire box, instead of, as required by law, from the general venire list.

The minutes of the court of June 12, 1905, show as follows:

"It is ordered that a jury commission is hereby ordered for the parish of Iberville, composed of the following citizens: Harry J. Slack, Thomas J. Schlater, Pierre Ellisalde, Philip S. Postell, and J. T. Guyton."

The minutes of September 24, 1907, which was the day previous to the filing of the motion to quash, show the following:

"The court's attention being called to the fact that the minutes of this court of date June 12, 1905. erroneously read as follows:

"'It is ordered that a jury commission is hereby ordered for the parish of Iberville, composed of the following citizens: Harry J. Slack, Thomas W. Schlater, Pierre Ellisalde, Philip S. Postell, and John T. Guyton.' And the order, as given by the court, having been erroneously written down by the clerk, and the order having been given verbally from the bench in open court as follows: 'It is ordered that a jury commission is hereby appointed for the parish of Iberville, composed of the following citizens: Harry J. Slack, Thos. W. Schlater, Pierre Ellisalde, Philip S. Postell, and J. T. Guyton.'

"The clerk is directed to correct said minutes so as to conform to the facts, making said or-

der read as originally given by the court, as follows:

"'It is ordered that a jury commission is hereby appointed for the parish of Iberville, composed of the following citizens: Harry J. Slack, Thomas W. Schlater, Pierre Ellisalde, Philip S. Postell, and J. T. Guyton.'"

The learned counsel for defendants contend that the order thus made on June 12, 1905, was not a compliance with the statute (Act No. 135, p. 216, of 1898), prescribing the manner of appointing the jury commissioners, for two reasons: First, because it was verbal, instead of written, as required by said act; and, second, because it contained no words of appointment, and is therefore insufficient in form.

Of the order of September 24, 1907, correcting the minutes of June 12, 1905, defendants' learned counsel say that, while it purports to be a correction of minutes, it in reality is an attempt to supply retrospectively the deficiency of the order of June 12, 1905.

The statute (Acts 1898, p. 218, No. 135, § 3) gives some countenance to the contention that the order appointing the jury commissioners must be in writing, and cannot be given verbally even in open court. It reads:

"The evidence of the appointment of said jury commissioners shall be the written order of the district judge, which order shall be entered upon the minutes of the district court."

Here apparently it is required that there shall be both a written order and an entry on the minutes; but it is every-day experience that the real meaning of a statute is not always what a superficial reading of it would indicate. Thus, in Bank v. Foster, 5 La. Ann. 516, a statute providing that in case the bank suspended specie payments its circulating notes should bear interest until paid was interpreted to mean that the notes should bear interest until the bank resumed specie payments. And in State v. Wiltz, 11 La. Ann. 439, a statute "creating a recorder of mortgages for the parish of Orleans" and "repealing all laws contrary to this act and on the same subject-matter," was interpret-

ed not to have created a new office, or to have abolished the existing office, or to have disturbed the incumbent thereof. To multiply instances where the apparent, literal meaning of statutes has been disregarded and the real intention of the Legislature given effect would be useless. See 26 A. & E. E. 602, where the cases are collated, and the rule is stated.

The manifest object of the present statute is to provide for there being reliable evidence of the appointment in question having been made. The statute does not profess to do more than to declare what this evidence shall consist of. It shall consist, it says, of "the written order of the judge, which order shall be entered upon the minutes of the district court." The question is whether both the written order of the judge and the entry upon the minutes of the court are required, or whether the minute entry will suffice.

We think the latter. The object being to provide for there being reliable evidence of the appointment having been made, that object is fully and completely attained when a minute entry has been made. The evidence thus provided for is for the use of the court making the appointment, part of whose machinery the commissioners are to be; and a court of record cannot need and, in fact, cannot have, better evidence of its own acts than its own record. Seeing by its own record that the appointment has been made, the court can safely rest satisfied of the fact, and dispense with any further evidence. Any further evidence would be simply supererogatory. There can be absolutely no reason for attributing to the Legislature the desire to provide a court of record with better evidence of its own acts than its own record.

In view of the fact that the object of the statute is to provide for there being reliable evidence of the appointment having been made, and of the further fact that a

court of record cannot possibly need, or have, more reliable evidence of its own acts than its own record, the requirement of the order having to be written must be looked upon as nothing more than a means of procuring an entry of the order on the minutes of the court, a means which is indispensable when the order is made in chambers, but which is entirely unnecessary when the order is made in open court. No law authorizes the clerk to make a record of any verbal order the judge should make in chambers. Hence any record he might keep of such orders would be unofficial, and as a consequence possess no evidentiary character whatever. All such chambers orders must therefore be given by the judge in writing. Until they are given in writing, there cannot be any evidence of their having been given, unless, indeed, they can be proved by parol, and no one would pretend such a thing. But the case is entirely different with orders made in open court. The clerk is required by law to make at once a record of all such orders, and such record is the very highest evidence that the court can possibly have of the order having been made. The statute we are interpreting must therefore be read in the light of the fact that the order in question may be made by the judge in chambers, and that, when so made, it cannot possibly be entered on the minutes of the court, or be put of record, or be proved, unless made in writing, and, in consequence the requirement of the order having to be in writing, it must be understood as intended to have application only when the judge makes it in chambers.

Indeed, the fact is that an order dictated to the clerk by the judge in open court and duly entered of record by the clerk cannot be said to be a verbal order of the judge. The judge of a court of record is not the court. The court is an organism of which the clerk is a part. 11 Cyc. 652; Marr's Crim. Juris. 444. The court, as it were, speaks by the mouth of the judge, and writes with the hand of the clerk. In Nolan v. Babin, 12 Rob. 531, this court, quoting Starkie on Ev. p. 1034, said:

"Courts of record speak by means of their records only."

In State v. Lazarus, 39 La. Ann. 152, 1 South. 368, this court said:

"The minutes of a court of record are never allowed to be contradicted by parol."

In Dorsey v. Hills, 4 La. Ann. 106, this court held that a judgment had no force until entered of record. In Deblanc v. Deblanc, 15 La. Ann. 224, this court held that the recitals of the record control those of the written judgment. In State v. Doyle, 42 La. Ann. 642, 7 South. 699, it was held that an order not shown by the record cannot be proved by parol. In 11 Cyc. 683, it is said that:

"Orders made by the court should not be entered as orders made by the judge thereof."

And, at page 763, that:

"All orders of a court not entered of record are extrajudicial and void."

In State v. Lougineau, 6 La. Ann. 700, this court held that an order fixing the amount of bail has to be written, and that it is written when made in open court.

But an order thus written by the clerk under the dictation of the judge in open court, even if viewed as an order not of the court but of the judge, is not necessarily a verbal order. In Williams v. Ready, 72 Wis. 408, 39 N. W. 779, a statute providing that the defendant might offer in writing to permit plaintiff to take judgment against him, in a justice of the peace court, was held to have been complied with by a verbal answer of the defendant entered on the justice's docket. In Waterman v. Waterman (Supreme Ct. Spec. T.) 37 How. Prac. (N. Y.) 36, the court held that a consent required to be in writing was not necessarily required to be signed. It has even been held that an or-

der sent by the judge to the clerk by telegraph was a written order within the meaning of the statute requiring in such a case a written order from the judge.

We conclude that the dictation of the order to the clerk in open court and the entry of it on the minutes was a compliance with the statute, and we pass to the consideration of the sufficiency of the order in point of form. This order must be read in the light of the circumstances under which it was made. The law required the judge to appoint five citizens to "constitute a jury commission for the parish"; and, in obedience to that requirement, the court made the order in question. It reads:

"It is ordered that a jury commission is hereby ordered to be composed of the following citizens."

Instead of ordering the citizens to compose the commission, the court ordered the commission to be composed of the citizens. We do not think that any one, even the most obtuse person, reading this order in the light of the law in obedience to which it was made, can fail to understand its full and exact meaning. We hold, therefore, that the order was sufficient in form. The form is the usual one for appointing family meetings, and no one, so far as we know, has ever thought of questioning its sufficiency. We have no doubt at all that the clerk understood as well as it is possible for any one to understand anything that in dictating the order the judge was appointing the jury commissioners for the parish as required by law, and that in departing from the phraseology of the judge he did so not through accident but with a view to improvement, as notaries are wont, in receiving a will under dictation, to translate into legal terms the language of the testator. He sought to dress up the plain English of our learned brother in better legal garb. Fortunately the disguise was not made so complete as to conceal the identity of the thought.

The other ground of the motion to quash, namely, that the commissioners selected the grand jurors from the names in the box, instead of from the list, is not better founded. The evidence shows that the commissioners took out from the box the slips on which the names were written, and spread out these slips in such a way as in reality to constitute a list, and made the selection from them. This was a sufficient compliance with the statute; and we assume that the learned counsel for defendants have so recognized, since they have not pressed this ground in their brief.

The motion to quash the indictment was overruled on September 25th, and on that day the case was fixed for trial for October 4th. On the latter day, when the case was called for trial, the defendants moved to quash the venire of the petit jury on the ground that it had been drawn from a box containing less than the 280 names required by law. This motion was taken up for trial immediately. Counsel for defendants offered in evidence the procès verbal of the drawing of the jury, and, after having made this offer, asked the court that the general venire box be opened and the names therein be counted. The procès verbal showed that the box had been supplemented to the full number required by law, namely, 300, and that the grand jury venire of 20 names had then been drawn, leaving 280 in the box for the drawing of the petit jury venire. In other words, that the drawing had been strictly according to law. The court would not postpone the trial for the purpose of summoning the jury commissioners to open the general venire box and count the names therein; but overruled the motion, and proceeded with the trial. Later, namely, on the 12th, on the day on which the motion for a new trial was tried, but after the new trial had been denied, the box was opened by the commissioners in the presence of the court; and it was found that the box contained only 218

names, instead of 220, as, after the deduction of the 80 which had been drawn for the grand and petit juries, it should have contained. The judge states that this count was made as soon as the presence of the commissioners could be procured. To the refusal of the judge to postpone the trial until the commissioners could be summoned and the names counted the defendants reserved a bill of exceptions, and also to the tardy counting of the names defendants reserved a bill of exceptions; the ground of the latter bill being that the proper time to have counted the names was on the trial of the motion to quash. It may be well to mention that on the trial of the first motion to quash the jury commissioners and the clerk had testified to the manner of the drawing, and had corroborated by their testimony the recitals of their procès verbal, to the effect that before proceeding to draw the grand jury venire of 20 they had supplemented the names in the general venire box, so that there were in the box when the venires were drawn the full 300 required by law.

The proper evidence of the manner in which the jury has been drawn, or of the number of names in the box at the time of the drawing, is the procès verbal of the drawing; and the accused is not entitled to have the general venire box opened and the names therein counted, as was sought to be done in the case; not, at least, in the absence of sworn allegations of fraud. Whether such allegations would pave the way to such an investigation is a question not now necessary to be considered. The law forbids the opening of the general venire box "for any purpose except in the presence of a majority of the jury commissioners." The administration of justice would be seriously hampered if every prisoner when his case was about to be called up for trial could require that the trial be postponed until a majority of the jury commissioners had been summoned from their homes and required to open the general venire box and count the names therein.

In like manner, the administration of justice would be seriously hampered if the validity of the drawing of the venire depended, not upon the condition of the box at the time the drawing was made, but upon the condition of the box at the time the case was called up for trial. In a spirit of liberality, or moved perhaps by a tender sense of justice, the learned judge a quo had the box opened and the names counted, and the defendants now seek to take advantage of the circumstance that the box fell short of the requisite number by two names. Such a slight discrepancy can easily be accounted for by the chapter of accidents. Between such a case and that of State v. Love, 106 La. 661, 31 South. 289, where the procès verbal showed that the general venire box had not been replenished before the drawing of the jury, there is no analogy whatever. The analogy is rather with the case of State v. Batson, 108 La. 479, 32 South. 478, where by accident one of the names in the general venire box had been duplicated, and as a consequence the box fell one short of the requisite number. In that case it was certain that the box had been short one name at the drawing, whereas in the instant case there is no such certainty. On the contrary, the positive evidence is that it contained the full quota of 300.

Judgment affirmed.