165 So. 323

**STATE v. MORRISON et al.**

No. 33444.

Dec. 2, 1935.

Rehearing Denied Jan. 6, 1936.

Stephens & Stephens, S. M. Cagle, W. H. Wamsley, and Henry W. Bethard, Jr., all of Coushatta, for appellants.

Gaston L. Porterie, Atty. Gen., Jas. O'Connor, Asst. Atty. Gen., S. R. Thomas, Dist. Atty., of Natchitoches, and Lessley P. Gardiner, Asst. to Atty. Gen., for the State.

O'NIELL, Chief Justice.

The defendants were indicted, in one count in the indictment, for the murder of

two persons, Effie Monroe and Ruby Lee Monroe, and were found guilty as charged and sentenced to be hanged. They have appealed from the verdict and sentence.

The only bill of exceptions that was reserved is the one which was reserved to the overruling of a motion for a new trial. The complaint made in the motion for a new trial is that the verdict was contrary to the law and the evidence, the complaint, stated specifically in the motion, being that the defendants were tried at one time for two separate and distinct crimes of murder, which the defendants say the evidence showed were not committed at the same time, or with the same weapon or kind of weapon, or for the same motive. They aver in their motion that they could not ascertain, without prejudicing their case, before the trial, what the theory of the state was in charging in one indictment, and in one count, the killing of two persons; and that they were not aware, and had no means of knowing, that the state would attempt to prove two separate and distinct crimes, under such an indictment. The defendants aver in their motion that it was developed on the trial, by evidence introduced by the state, that the three defendants "conspired to rob the home of John Monroe," who was the husband of Effie Monroe and the father of Ruby Lee Monroe; that Alex Morrison, one of the defendants, was a brother-in-law of John Monroe, having married a sister of Effie Monroe; that, when the defendants "wearing masks made of the corner of tow sacks," went to the house of John Monroe, they believed and had every reason to believe that John Monroe and his family

were attending a church service; that the defendants entered the house and were surprised to find Effie Monroe at home; that she tore the mask from the face of James Morrison, and that he thereupon shot her in the leg, inflicting, according to the testimony of the coroner, only a superficial or flesh wound; that the three defendants then immediately abandoned their conspiracy to commit robbery, and Alex Morrison and Richard Valentine immediately fled from the scene; that James Morrison attempted to flee, but Effie Monroe followed him out of the house and into the yard, where she was killed by James Morrison, "who used an axe as the death weapon"; that, "after the lapse of some appreciable time after the killing of Effie Monroe," some one entered the Monroe house and killed Ruby Lee Monroe; that, at the time when the defendants entered the house, the sum of approximately $200 was concealed in the house, and that, after the two homicides were committed and the three defendants were incarcerated in the parish jail, the sum of $166 was found in a mattress in the house, but that the discrepancy in the two sums of money was due to the faulty memory of the prosecuting witness, John Monroe, and not to the theft of any money by the defendants. From this statement of the state's evidence, the defendants, in their motion for a new trial, make these deductions and contentions, viz., that if they, the defendants, conspired to "rob the house of John Monroe" they never contemplated the taking of human life; that as soon as they found that the house was occupied they abandoned their conspiracy "to rob the

house"; that if Effie Monroe had not followed James Morrison out of the house there would have been no homicide; that Ruby Lee Monroe was killed by a person unknown, and after the conspiracy to rob had been abandoned; that the theory of the state was that the defendants, after abandoning the conspiracy to rob, conspired to kill Ruby Lee Monroe, for fear that she would make known the one who had killed her mother, and that one of the defendants (no showing being made as to which one of them) returned to the house and killed Ruby Lee Monroe; that, even under that theory, the two homicides were separate and distinct crimes; and that the defendants were greatly prejudiced by being tried at one time for the killing of two persons.

The judge before whom the case was tried says in his statement per curiam, or reasons for overruling the motion for a new trial, that the two murders were both committed in the carrying out of a conspiracy to commit a felony, and were so closely connected that they constituted one continuous unlawful transaction. The judge, in support of his finding in that respect, declares that the following facts were proved on the trial: The three defendants entered into a conspiracy to go to the home of John Monroe and steal a sum of money, about $200, which James Morrison knew was in the house. The three defendants went to the Monroe house on a night when they knew that John Monroe would be away, attending a church service, and that his wife, Effie Monroe, and her child, Ruby Lee Monroe, seven years of age, and another child, about

three years of age, would be at home. Richard Valentine stationed himself on the front porch, and the two Morrisons went to a rear door, where James Morrison, wearing a mask made of the corner of a burlap bag, entered the house and went into a bedroom where he believed the money was hidden in a bed. Effie Monroe and her two children were asleep in the bed. A scuffle ensued between Effie Monroe and James Morrison, and in the scuffle she tore the mask from his face, and he shot her, inflicting a wound in her leg. She ran out of the house, followed by the two Morrisons and Richard Valentine. They threw her or knocked her to the ground, and James Morrison held his foot on her head while one of the three men split her skull with an axe. The three men then went towards an automobile in which they had driven to the Monroe home, and, having walked a distance of a hundred feet or more in the direction of the automobile, they decided to kill the child, Ruby Lee Monroe, for fear that she might have recognized James Morrison in the scuffle with her mother. One of the three men then returned to the house and shot the child while she lay in the bed, killing her instantly. The evidence did not disclose which one of the men killed the child. Immediately after she was killed the three men returned to their automobile and drove away, taking with them the gun and the axe, both of which they threw into a lake from a bridge.

 Our conclusion, from the facts stated in the motion for a new trial, as amplified by the statement of the judge who heard the evidence, is that the murdering of the mother and child was the consummation of a conspiracy, on the part of the three defendants, to commit a felony, and that the murdering of the two persons constituted or formed part of one continuous and felonious act. In such a case the crime may be charged in one count in the indictment. In State v. Batson, 108 La. 479, 32 So. 478, where an indictment in one count for the murdering of six persons was held valid, it was said:

"Though a criminal act may operate on more than one person, or thing, nevertheless, if it be but one act, consummated at one time, it may be charged as one offense, and an indictment charging in one count the murder of six persons is not bad for duplicity unless it appears upon its face that the deaths resulted from two or more distinct acts. But if, upon the trial, it is shown that all the deaths did not result from the same act, the accused may then compel the state to elect upon which charge it will proceed."

No motion was made during the trial of this case to compel the state to elect whether to proceed with the trial for the murder only of Effie Monroe or to proceed with the trial for the murder only of Ruby Lee Monroe. It was a matter for the defendants or their attorneys to decide, as the trial progressed, whether it was a disadvantage for the defendants to be subjected to only one trial for the murder of the two persons. There was nothing essentially or fundamentally wrong in their being subjected to only one trial for the murder of two persons. In the Batson Case it was said: "But, on the contrary, in such cases it is to the interest of the ac-

cused and of the orderly administration of justice that the legal consequences of the one act should be determined by one trial." In the present case, the facts stated in the defendants' motion for a new trial show that they could not have been deceived, by the form of the indictment, as to the facts which the state intended to prove.

We find it unnecessary to consider the question whether the objection to the indictment being in only one count should have been made, if made at all, before the jury was sworn, and by way of a demurrer or motion to quash the indictment, according to article 221 of the Code of Criminal Procedure.

The verdict and sentence are affirmed.